United States District Court
Southern District of Texas
**ENTERED**
May 23, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INEOS TECHNOLOGIES USA, LLC, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No. 4:16-CV-1145 |
| BASF CORPORATION, | § § | |
| Defendant. | § § | |

**ORDER**

Pending before the Court is Plaintiff INEOS Technologies USA, LLC ("Plaintiff" or "INEOS Technologies")'s request for preliminary injunctive relief. (Instrument No. 4).

**I.**

**A.**

Plaintiff INEOS Technologies filed its Original Petition against Defendant BASF Corporation ("Defendant" or "BASF"), alleging anticipatory breach of contract and requesting declaratory relief on April 25, 2016 in the 80th Judicial District Court of Harris County, Texas in Cause No. 2016-26209. (Instrument No. 1-1). Plaintiff's Original Petition included an Application for Temporary and Permanent Injunction. (Instrument No. 1-1). Defendant BASF filed a Notice of Removal on the basis of diversity jurisdiction to the District Court for the Southern District of Texas on April 27, 2016. (Instrument No. 1).

On May 2, 2016, Plaintiff filed an Emergency Motion for Expedited Discovery and Hearing on Application for Temporary Injunction, seeking to enjoin an imminent sale of assets by Defendant BASF to W.R. Grace & Co. ("Grace"). (Instrument No. 4). On May 4, 2016,

Defendant BASF filed its opposition. (Instrument No. 7). On May 6, 2016, the Court denied the Plaintiff's Motion to Expedite and set Plaintiff's motion for preliminary injunctive relief for May 12, 2016 at 9:30 a.m. (Instrument No. 15).

**B.**

On February 1, 2009, the parties, INEOS Technologies and BASF, entered into a valid and enforceable contract ("Supply Agreement") under New Jersey law. (Instruments No. 1-1; No. 7). Section 4.5 of the contract provided INEOS with the right of first refusal to purchase "Catalyst Production Assets" as defined in an attachment to the Supply Agreement from BASF on the following terms and conditions:

> "(a) <u>Notice of Proposed Transfer</u>. In the event of a proposed sale or transfer to a third party to which this Right of First Refusal applies, BASF shall deliver to INEOS a written notice (the "Notice") stating:
>
> (i)     BASF's bona fide intention to sell or otherwise transfer the Catalyst Production Assets in accordance with such offer;
> (ii)    the name of each proposed purchaser or other transferee ("Proposed Transferee"); and
> (iii)   the bona fide cash price or other consideration for which BASF proposes to transfer the Catalyst Production Assets (the "Offered Price") and any applicable material terms and conditions.
>
> BASF shall offer the Catalyst Production Assets to INEOS or its assignee(s) at the Offered Price and on the stated terms and conditions. In the absence of an Offered Price for the Catalyst Production Assets alone, the price for the Catalyst Production Assets shall be calculated as shown in Schedule D."

(Instruments No. 1-1; No. 7). Additionally, the contract states that:

> "This Right of First Refusal:
> • shall apply where the Catalyst Production Assets are sold or transferred alone; in other words, they constitute 100% of the assets being sold or transferred;
> • shall apply where the Catalyst Production Assets constitute part of the value of the assets being sold or transferred as a component of the sale or transfer of BASF's Polyolefins Catalyst business or as a component of the sale or transfer of BASF Catalyst LLC (whether such assets are assets based at the Pasadena site or elsewhere);
> • shall not apply to mergers or other types of transactions where BASF or its Affiliate is the surviving entity."

(Instrument No. 8-1 at 6). Plaintiff INEOS alleges that on January 19, 2016, BASF purported to notify INEOS that it intended to sell certain assets to Grace, including certain catalyst production assets subject to INEO's right of first refusal under the Supply Agreement. (Instrument No. 4 at 1-3). Plaintiff alleges that BASF's notice was vague and claimed that Grace had assigned a valuation to the catalyst production assets subject to the Supply Agreement. (Instrument No. 4 at 1-3). Plaintiff alleges that the INEOS and Grace had agreed to an artificially high price purportedly established by Grace as part of a larger deal. (Instrument No. 1-1). Plaintiff alleges that for the ensuing 90 days, it tried in vain to obtain information from BASF about the proposed transaction with Grace as well as updated financial information with which to set the formula price under the Supply Agreement. (Instrument No. 4 at 1-3). Plaintiff alleges that at the end of 90 days on April 18, 2016, it exercised its right of first refusal at the formula price set out in the Supply Agreement because BASF refused to disclose the requested information. (Instrument No. 4 at 1-3). However, BASF announced via a press release on April 22, 2016, of its agreement to sell the assets, including Catalyst Production Assets subject to the Supply Agreement, to Grace. (Instruments No. 4; No. 7).

Conversely, Defendant BASF alleges that its notice given to INEOS Technologies on January 19, 2016 complied fully with the requirements of the Supply Agreement; BASF alleges that the notice informed Plaintiff that Grace had proposed to acquire the assets at the offered price of €70 million, that BASF intended to proceed with the transaction, and that Plaintiff had 90 days to meet that price. (Instrument No. 7 at 8). Defendant alleges that Plaintiff spent the next three months arguing that BASF's letter did not constitute the required notice but never expressed an interest in acquiring the assets at Grace's offered price until the expiration date of Plaintiff's right of first refusal on April 18, 2016. (Instrument No. 7 at 8). On April 18, 2016, Plaintiff sent BASF a letter purporting to exercise its right of first refusal for €22 million,

3

allegedly because BASF had not failed to deliver to Plaintiff an Offered Price specific o the Catalyst Production Assets. (Instrument No. 7 at 8). On April 20, 2016, BASF rejected Plaintiff's attempt to exercise its right of first refusal, and informed Plaintiff that it could have exercised its right of first refusal only by meeting Grace's offered price of €70 million, which INEOS Technologies failed to do. (Instrument No. 7 at 9).

Plaintiff filed suit against BASF on April 25, 2016 in the District Court of Harris County, Texas, alleging anticipatory breach of contract and seeking a declaratory judgment that INEOS Technologies has properly exercised its right of first refusal at the Schedule D price for the Catalyst Production Assets. (Instrument No. 1-1). On May 2, 2016, Plaintiff filed an Emergency Motion for Expedited Discovery and Hearing on Application for Temporary Injunction, seeking "expedited discovery in aid of its application for injunctive relief, and a hearing on its application." (Instrument No. 4 at 1). It is unclear whether Plaintiff was attempting to renew its previous request for a temporary restraining order that was filed in state court, or seek a preliminary injunction under Federal Rule of Civil Procedure 65. On May 6, 2016, the Court DENIED Plaintiff's emergency motion for expedited discovery and set the case for a preliminary injunction hearing on May 12, 2016 at 9:30 a.m. (Instrument No. 14).

## II.

To be entitled to a preliminary injunction, the applicant must establish: (1) a substantial likelihood of success on the merits, (2) a substantial threat that failure to grant the injunction will result in irreparable injury, (3) that the threatened injury outweighs any harm that the injunction will cause to the party to be enjoined, and (4) that the preliminary injunction will not disserve the public interest. *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012). A "preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements."

*Id.* An "absence of likelihood of success on the merits is sufficient to make the district court's grant of a preliminary injunction improvident as a matter of law." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 203 (5th Cir. 2003).

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose . . . [a] party thus is not required to prove his case in full." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (U.S. 1981). An "absence of likelihood of success on the merits is sufficient to make the district court's grant of a preliminary injunction improvident as a matter of law." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 203 (5th Cir. 2003).

## III.

### A.

Plaintiff INEOS Technologies has filed this suit alleging an action for anticipatory breach of contract. Plaintiff claims that BASF has expressed its intent to ignore Plaintiff's contractual right of first refusal and sell its Catalyst Production Assets to Grace. (Instrument No. 1-1).

Under Texas law, to show a breach of contract, the plaintiff must demonstrate four elements. *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App--Fort Worth 2010, no pet.). First, the plaintiff must show the existence of a valid contract, which requires a meeting of the minds and acceptance in strict compliance with an offer's terms. *See Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App--Houston [14th Dist.] 2010, pet. denied).

To prove the first element, the existence of an enforceable contract, a party must demonstrate the existence of an offer, acceptance, and consideration. *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App--Amarillo 2008, pet. denied). Second, the plaintiff must demonstrate that he or she performed his or her contractual obligations. *Rice*, 324 S.W.3d at 670. Third, a plaintiff must articulate facts that demonstrate the defendant's breach. *See Philips v. Deutsche*

5

*Bank Nat'l Trust,* 2011 WL 482839, at 3 (W.D. Tex. Feb. 7 2011); *Rice,* 324 S.W.3d at 666. Fourth, a plaintiff must have suffered damages as a result of the breach. *See Southwell v. Univ. of Incarnate Word,* 974 S.W.2d 351, 355 (Tex. App.--San Antonio 1998, pet. denied); *Abraxas Petroleum Corp. v. Hornburg,* 20 S.W.3d 741, 760 (Tex. App--El Paso 2000, no pet.).

In this case, the parties dispute whether BASF has anticipatorily breached the Supply Agreement by rejecting INEOS' offer of €22 million and announcing its sale of the Catalytic Production Assets to Grace on April 21, 2016. Plaintiff asserts that BASF first provided defective notice of the purported sale to Grace by omitting certain required information about BASF's dealings with Grace, and then illegally rejected INEOS Technologies' right of first refusal offer made on April 18, 2016. (Instrument No. 1-1 at 9-10). Plaintiff specifically asserts that BASF failed to state the intended bona fide cash price of the Catalyst Production Assets alone, and that therefore "the price for the Assets shall be calculated as shown in Schedule D." (Instrument No. 1-1 at 8). As such, Plaintiff requested further information from BASF to calculate the price as dictated by the Supply Agreement. Plaintiff alleges that BASF refused to provide such requested information. In contrast, Defendant BASF asserts that its letter to INEOS Technologies dated January 19, 2016 was sufficient under Section 4.5 of the Supply Agreement in that it provided a price for the Catalyst Production Assets alone, and that INEOS Technologies failed to exercise its right of first refusal under the contract before the expiration date. (Instrument No. 7).

BASF's letter dated January 19, 2016 indeed notified INEOS Technologies that BASF had received a "nonbinding Indication of Interest" from Grace, which "includes a valuation of the Catalyst Production Assets at of €70 million (the "Offered Price")." (Instrument No. 7-1 at 10). The January 19th letter also stated that BASF had a bona fide intention to sell the Catalyst Production Assets to Grace for the Offered Price of €70 million. (Instrument No. 7-1 at 10). In

6

light of these plain-text provisions in BASF's notice on January 19, 2016, the Court believes that BASF fully complied with the three delineated requirements in Section 4.5 of the parties' Supply Agreement. Based on a review of the relevant documents, the Court finds that there is not a likelihood that Plaintiff would succeed on the merits.

**B.**

A party can show a likelihood of suffering irreparable harm if the harm cannot be redressed by money damages. *Anadarko Petroleum Corp. v. Davis*, Civil Action No. H-06-2849, 2006 WL 3837518, *20 (S.D. Tex. Dec. 28, 2006) (citation omitted). Irreparable harm must be more than an unfounded fear, but need not be an existing injury—a strong threat of injury is sufficient. *TransPerfect*, 594 F. Supp. 2d at 757; *see also U.S. v. Emerson*, 270 F.3d 203 (5th Cir. 2001). "Likely economic injuries may support a finding of irreparable harm especially if the economic losses are difficult to quantify." *TransPerfect*, 594 F. Supp. 2d at 757; *see Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 810 n.1 (5th Cir. 1989).

In this case, Plaintiff asserts that irreparable harm will befall INEOS Technologies if BASF proceeds with its agreed sale of the assets at issue to Grace. (Instrument No. 4). However, aside from pointing to the "unique character of the Assets" and alleging that the Assets may be unrecoverable if sold, Plaintiff does not allege that BASF's Catalyst Production Assets are in fact inimitable and cannot be obtained through other means. (Instrument No. 1-1 at 15). At the hearing on May 12, 2016, Defendants presented evidence and testimony that the contractual agreement between the parties contains a clause that obligates Grace to continue to provide the products to INEOS Technologies, and that provides the same right of first refusal INEOS Technologies now has to buy the materials in the event that Grace terminates the supply contract. Regardless of Grace's disposition and future plans, Defendants assert that Plaintiff would continue to receive products from Grace in the same manner as they have received them from

Defendants, and have the ability to exercise a right of first refusal regarding the Catalyst Production Assets.

As such, this Court finds that Plaintiff has not shown irreparable harm and that any harm could be remedied by traditional damages. As such, Plaintiff is not entitled to a preliminary injunction under F.R.C.P. 65.

### C.

A plaintiff seeking permanent injunction must show that a remedy in equity is warranted, considering the balance of hardships between the plaintiff and the defendant. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010). Where the plaintiff and defendant present competing claims of injury, the traditional function of equity has been to arrive at a nice adjustment and reconciliation between competing claims; in such cases, the court balances the convenience of parties with possible injuries to them according as they may be affected by the granting or withholding of injunction. *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982). In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction. *Railroad Comm'n. v. Pullman Co.*, 312 U.S. 496, 500 (1941).

In this case, Plaintiff alleges that the balance of equities weighs in its favour, because Defendant BASF has attempted to thwart the terms of the contract and anticipatorily breach the Supply Agreement. However, as previously stated, the Court finds that there is not a likelihood of success on the merits on this claim. Accordingly, the equities do not weigh in Plaintiff's favor.

### D.

With respect to Plaintiff's anticipatory breach of contract claim, "the public has an interest in knowing and understanding that agreements between parties will be honored, that

8

contracts will be enforced, and that confidential information and trade secrets will not be disclosed. The public also has an interest in knowing and understanding that persons who breach their agreements may not profit or otherwise benefit from such conduct." *Corporate Relocation, Inc.*, 2006 WL 4101944, at *18.

Because the Court finds that the evidence supports Defendants' claim that they have complied with the parties' Supply Agreement, the enforcement of an injunction would not serve the public interest. The Court finds that a preliminary injunction should not be issued.

## IV.

IT IS HEREBY ORDERED THAT Plaintiff's motion is **DENIED. (Instrument No. 4).**

The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on this the 23rd day of May, 2016, at Houston, Texas.

VANESSA D. GILMORE
**UNITED STATES DISTRICT JUDGE**